UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PRUDHVI CHOWDARY CHEKURI<br>Door No. 20-5-79/1/A/A/1,<br>Behind K.L.R House, Contractors Colony,<br>Palvancha, Telangana, India 507115<br><br>*Plaintiff*,<br><br>v.<br><br>ANTONY J. BLINKEN, U.S. Secretary of State, in his official capacity; c/o Executive Office, Office of the Legal Advisor, U.S. Department of State Suite 5.600, 600 19th Street NW Washington, DC 20522;<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity; c/o Office of the General Counsel, U.S. Department of Homeland Security 245 Murray Lane, SW Washington, DC 20528<br><br>MERRICK B. GARLAND, Attorney General of the United States, in his official capacity; c/o Attorney General of the United States, U.S. Department of Justice 950 Pennsylvania Avenue, NW Washington, DC 20530<br><br>JUDITH RAVIN, Consul General, U.S. Consulate General, Chennai, India, in her official capacity; c/o Executive Office, Office of the Legal Advisor, U.S. Department of State Suite 5.600, 600 19th Street NW Washington, DC 20522;<br><br>*Defendants*. | Case No. _____<br><br>COMPLAINT FOR WRIT OF MANDAMUS AND OTHER INJUNCTIVE RELIEF |

1

## INTRODUCTION

1. Plaintiff Prudhvi Chowdary Chekuri is a citizen of India who seeks to resume his employment in the United States through an H-1B visa based on an approved I-129 petition. Plaintiff is an experienced Technical Consultant who has been assigned to work on a high-profile, complex in-house project "Nimble Application Development" for the H-1B Petitioner/Employer, Hallmark Global Technologies Inc. However, Plaintiff's visa application has been severely delayed by "administrative processing," forcing a delay in his return to the U.S. to resume employment on this project for the H-1B Petitioner.

2. Plaintiff is a key resource in developing the H-1B Petitioner's in-house "Nimble Application Development" project and is facing tremendous pressure from his employer to return to the United States as early as possible. Not having Plaintiff in the United States executing his duties and responsibilities as a Technical Consultant on this project is causing significant issues for the company and a significant loss of revenue.

3. Given the nature of the H-1B program and the considerable ongoing harm that is being inflicted on Plaintiff and the H-1B Petitioner Hallmark Global Technologies Inc., the delay in adjudicating Plaintiff's visa application is clearly unreasonable and the U.S. Department of State may be compelled to conclude the matter under the Mandamus Act and the Administrative Procedure Act.

4. On August 03, 2022, Plaintiff had a U.S. Visa Dropbox Appointment in Chennai, India for his H-1B visa and submitted all requested documents at the appointment. He was subsequently requested to appear for an in-person interview with a U.S. consular officer at the U.S. Consulate in Chennai, India on September 06, 2022. Plaintiff attended the in-person interview at the scheduled time. After the interview, he was issued a notice stating that his visa application has

been refused under section 221(g) of the U.S. Immigration and Nationality Act (INA) and it requires further administrative processing—an undefined and opaque process implemented by Department of State for certain visa applications. Plaintiff received an email on September 07, 2022, and was requested to send a list of documents via email to [chennaiHL@state.gov](mailto:chennaiHL@state.gov) , which he submitted on September 27, 2022.  Since then, Plaintiff has followed up regularly with the U.S. Consulate in Chennai, India (specifically on October 18, 2022; November 09, 2022; and January 30, 2023) but there has been no update on his visa application. Of great concern is that the latest email response from the U.S. Consulate on January 30, 2023 stated "The U.S. Consulate in Chennai is providing limited appointments for routine non-immigrant visa processing due to the COVID-19 pandemic. We will resume regular visa services as soon as possible, but are unable to provide a specific date at this time. **We kindly request that you do not send inquiries about the status of your case during this period**." (*Emphasis added.*)

     5. Despite the ongoing security-related administrative processing, Plaintiff was admitted to the United States on his previously approved F-1 student visa on December 27, 2014, casting significant doubt on the supposed security concerns that justify the delayed adjudication of his H-1B.

     6. Plaintiff departed the United States on July 31, 2022, and was expected to resume working on the H-1B Petitioner's high-profile, complex in-house project "Nimble Application Development" soon after his international trip.

     7. Plaintiff has suffered injuries as a result of the delays and these injuries will continue to accrue if his visa is not adjudicated soon His employment with the H-1B Petitioner Hallmark Global Technologies Inc. is a critical source of income and he is at risk of losing his assignment on this critical in-house project. Plaintiff is assigned to develop and customize "Nimble Property",

a part of the "Nimble Application Development" project based on the requirements of the H-1B Petitioner's clients. If the project deadlines are not met based on the expected timelines and commitments, the H-1B Plaintiff Hallmark Global Technologies Inc. will be at risk of losing clients, resulting in a significant loss of revenue and possibly the loss of Plaintiff's employment altogether.

8. The U.S. Consulate has repeatedly stated that the processing time varies and it cannot offer any estimate of how long administrative processing will take, leaving Plaintiff in a constant state of stress and uncertainty. As long as Plaintiff's visa is pending, he is unable to plan for the future as he lacks even basic information like when he can expect an adjudication.

9. The U.S. Department of State has a clear and unambiguous duty to adjudicate Plaintiff's visa application and to do so within a reasonable period of time. Based on the extraordinary length of Plaintiff's administrative processing, especially in light of his possession of a valid U.S. visa and his previous admission to the U.S., the delay by the U.S. Department of State in adjudicating his current visa application is clearly unreasonable.

10. Therefore, Plaintiff seeks an order compelling the U.S. Department of State to adjudicate his visa application, allowing him to either enter the U.S. to resume his employment with the H-1B Petitioner Hallmark Global Technologies Inc. on the high-profile, complex in-house project, or to begin making alternative plans as needed.

## JURISDICTION AND VENUE

11. The Court has jurisdiction pursuant to: 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (mandamus statute); 28 U.S.C. §§ 2201, 2202 (declaratory judgment); and 5 U.S.C. §§ 555(b), 701-708 (Administrative Procedure Act).

12. Venue is proper within the District of Columbia under 28 U.S.C. § 1391(e)(1)(A) because (1) this is a civil action in which Defendants are either employees or officers of the United States, acting in their official capacity, or an agency of the United States; (2) a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia because Defendants are headquartered within this district; and (3) there is no real property involved in this action.

## PARTIES

13. Plaintiff Prudhvi Chowdary Chekuri is a citizen of India who seeks to resume his employment in the United States through an H-1B visa based on an approved I-129 petition. Plaintiff is currently in India while his H-1B visa application is pending at the U.S. Consulate in Chennai, India.

14. Defendant Antony J. Blinken is U.S. Secretary of State and is sued in his official capacity. Defendant Blinken is primarily responsible for and has supervisory duties over the functions of the U.S. Department of State, including the processing and adjudication of nonimmigrant visas.

15. Defendant Alejandro Mayorkas is Secretary of Homeland Security and is sued in his official capacity. Defendant Mayorkas is primarily responsible for and has supervisory duties over the functions of the U.S. Department of Homeland Security, including security-related vetting of visa applications in coordination with the U.S. Department of State.

16. Defendant Merrick B. Garland is the Attorney General of the United States and is sued in his official capacity. Defendant Garland is primarily responsible for and has supervisory duties over the functions of the U.S. Department of Justice, including security-related vetting of visa

applications performed by departmental agency the Federal Bureau of Investigation (FBI) in coordination with the U.S. Department of State.

17. Defendant Judith Ravin is the Consul General at the U.S. Consulate General in Chennai, India and is sued in her official capacity. She supervises the nonimmigrant visa section of the embassy, which is processing Plaintiff's application.

## STATEMENT OF FACT

Statutory and Regulatory Framework for Visa Adjudications

18. The Immigration and Nationality Act (INA) establishes U.S. immigration procedures, including departmental responsibilities. The INA assigns responsibility to consular officers for issuing immigrant and nonimmigrant visas to foreign nationals who are eligible for those visas and admissible to the United States. *See* 8 U.S.C. § 1201; 22 C.F.R. § 41.111.

19. Under the INA, consular officials are required to act on visa applications. The relevant statutory language states that for nonimmigrant visas:

> When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 CFR § 41.121. The statutory language makes clear that although consular officials have the discretion to determine the outcome of a visa adjudication, they do not have discretion over whether or not to make an adjudication at all and are required to do so as a matter of ministerial duty as prescribed by plainly stated law. *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 281 (D.D.C. 2016) (citing *Patel v. Reno*, 134 F. 3d 929, 932 (9th Cir. 1997)).

20. One type of nonimmigrant visa created by statute is the H-1B specialty occupation visa. 8 U.S.C. § 1101(a)(15)(H)(i)(b). The H-1B visa is intended for nonimmigrants who "work in a

specialty occupation, engage in cooperative research and development projects administered by the U.S. Department of Defense, or are a fashion model of distinguished merit and ability."[1] According to the U.S. Department of Labor, "the intent of the H-1B provisions is to help employers who cannot otherwise obtain needed business skills and abilities from the U.S. workforce by authorizing the temporary employment of qualified individuals who are not otherwise authorized to work in the United States."[2]

21. To obtain H-1B classification, a company must file an I-129 petition with U.S. Citizenship and Immigration Services (USCIS) based on an approved Labor Condition Application from the U.S. Department of Labor. The company must hire the alien to work in a "specialty occupation," a position which requires a bachelor's degree or higher in a specific specialty. The alien must possess either said degree or experience equivalent to said degree. 22 C.F.R. § 41.53(a); 9 FAM 402.10-4(B).

22. The length of validity of the H-1B visa is determined by USCIS when it adjudicates the I-129 petition. A maximum of three years is allowed, but USCIS will approve the petition for as long as it determines there is concrete, non-speculative specialty occupation work available for the alien beneficiary.

23. If the alien beneficiary is already in the United States when the I-129 is approved, he or she may remain in the United States and continue working pursuant to the I-129 approval and the grant of an extension of his or her stay. However, if the alien beneficiary subsequently departs the United States and does not possess a valid visa, then he or she will need to apply for and obtain

---

[1] USCIS, "H-1B Visas for Temporary Workers," https://www.uscis.gov/working-in-the-united-states/h-1b-specialty-occupations
[2] U.S. Department of Labor, "H-1B Program," https://www.dol.gov/agencies/whd/immigration/h1b

an H-1B visa in order to return to the United States to resume working pursuant to the I-129 approval. To obtain an H-1B visa, the alien beneficiary submits the visa application (Form DS-160) online and schedules a U.S. visa dropbox appointment or an interview with the U.S. embassy or consulate, the timing of which depends on the individual embassy or consulate's wait times.

24. There are generally three outcomes of the U.S. visa dropbox appointment or interview: a visa is issued, a visa is denied, or "after your visa interview, your application may require further administrative processing."[3]

Plaintiff and His Employer Have Followed Standard Procedure for a Timely Filed H-1B Petition

25. Plaintiff, an Indian citizen, earned a Master of Science degree in Computer Engineering from Colorado Technical University, Colorado, United States of America in 2016. He also has several years of experience in the field of information technology.

26. In April 2018, Performance Resources NY Inc., subsequently acquired by the current H-1B Petitioner Hallmark Global Technologies Inc., filed an I-129, H-1B Cap petition with USCIS, which was approved with validity from May 06, 2020, to September 03, 2021. Plaintiff had been assigned to work as a Technical Consultant on an In-house project "Nimble Property", part of the "Nimble Application Development" project for the H-1B Petitioner. Plaintiff's was responsible for developing and customizing the Nimble Property software as per the H-1B Petitioner's client's requirements; coordinating with the client for any new enhancements; implementing and managing project changes/enhancements; creating reports and dashboards to help managers and reporting teams have a clear understanding of the integration, delivery and

---

[3] U.S. Department of State, "Temporary Worker Visas"
https://travel.state.gov/content/travel/en/us-visas/employment/temporary-worker-visas.html

timelines; and monitoring the status of the project to ensure the project deadlines are met, among other responsibilities.

27. On September 01, 2021, the H-1B Petitioner Hallmark Global Technologies Inc. filed an I-129, H-1B Extension petition with USCIS, so that Plaintiff could continue working on their high-profile, complex in-house project. The H-1B Extension petition was approved on December 06, 2021 with validity from September 01, 2021 to August 22, 2024, along with an extension of Plaintiff's stay in H-1B nonimmigrant status matching the validity of the I-129 petition approval.

28. On July 31, 2022, Plaintiff departed the United States on what was supposed to be a temporary trip to India, with the expectation from his employer, the H-1B Petitioner Hallmark Global Technologies Inc., that Plaintiff would resume working on their high-profile, complex In-house project soon after his trip.

29. Since Plaintiff did not have a valid H-1B visa, he needed to apply for and obtain an H-1B visa. He submitted his DS-160 nonimmigrant visa application and scheduled a U.S. Visa Dropbox Appointment in Chennai, India on August 03, 2022. He submitted all requested documents at the appointment.

30. Plaintiff was subsequently requested to appear for an in-person interview with a U.S. consular officer at the U.S. Consulate in Chennai, India on September 06, 2022. Plaintiff attended the in-person interview at the scheduled time. Upon completion of the interview, the consular officer failed to issue the visa (i.e., informed of immediate or closely pending approval). Instead, the U.S. Consulate issued a notice to Plaintiff stating that his visa application has been refused under section 221(g) of the U.S. Immigration and Nationality Act (INA) and it requires further administrative processing. Plaintiff received an email on September 07, 2022 requesting him submit documents via email to chennaiHL@state.gov. On September 27, 2022, Plaintiff submitted

the documents with all of the information requested to the stated email address. Since then, Plaintiff has followed up regularly (specifically on October 18, 2022; November 09, 2022; and January 30, 2023) but there has been no update on his visa application. Of great concern is that the latest email response from the U.S. Consulate on January 30, 2023 stated "The U.S. Consulate in Chennai is providing limited appointments for routine non-immigrant visa processing due to the COVID-19 pandemic. We will resume regular visa services as soon as possible, but are unable to provide a specific date at this time. **We kindly request that you do not send inquiries about the status of your case during this period**." (*Emphasis added.*).

The U.S. Department of State Has Unreasonably Withheld a Decision on Plaintiff's Visa Application

31. Despite the ongoing security-related administrative processing, Plaintiff was admitted to the United States on his previously approved F-1 student visa on December 27, 2014, casting significant doubt on the supposed security concerns that justify the delayed adjudication of his H-1B.

32. Plaintiff departed the United States on July 31, 2022, and was expected to resume working on the high-profile, complex In-house project for the H-1B Petitioner Hallmark Global Technologies Inc soon after his international trip. He is facing tremendous pressure from his employer to return to the United States as early as possible. Not having Plaintiff in the United States executing his duties and responsibilities as a Technical Consultant on this project is causing significant issues for the company and a significant loss of revenue. Plaintiff is required to return to the United States as early as possible to meet the deadlines of his employer and its clients and avoid the delay in delivering the product to the company's clients.

33. The U.S. Consulate has repeatedly stated that the processing time varies and it cannot offer any estimate of how long administrative processing will take, leaving Plaintiff in a constant state of stress and uncertainty. As long as his visa is pending, he is unable to plan for the future as he lacks even basic information like when he can expect an adjudication.

34. Given the nature and objectives of the H-1B program, the process for acquiring an H-1B visa, and the time constraints imposed by I-129 validity dates, the delay in adjudicating Plaintiff's visa application is clearly unreasonable.

Plaintiff Faces Significant Hardship Due to the U.S. Department of State's Inaction

35. Plaintiff has already suffered significant hardships as a result of the U.S. Department of State's delays and these hardships will continue and increase as long as the delay in adjudicating Plaintiff's visa continues.

36. Plaintiff's employment with the H-1B Petitioner Hallmark Global Technologies Inc. is a critical source of income and he is at risk of losing his assignment on this critical project. The long delay in adjudicating Plaintiff's visa application casts his assignment on this project into doubt—the H-1B Petitioner does not know how long it can afford to wait for Plaintiff to return to the U.S. to resume working on their critical "Nimble Application Development" project—and Plaintiff faces the real possibility of losing his employment altogether. Losing this assignment and his employment would be a huge professional setback.

The "TRAC Factors" Support Plaintiff's Claim of Unreasonable Agency Delay

37. In determining whether or not an agency delay is unreasonable for the purposes of APA/Mandamus suits, numerous courts have adopted the so-called "TRAC Factors" outlined in *Telecomms, Research & Action Ctr. v. F.C.C. ("TRAC")*, 750 F. 2d 70, 80 (D.C. Cir. 1984). *See,*

for example, <u>Brower v. Evans</u>, *257 F. 3d 1058, 1068* (9th Cir. 2001); <u>Kashkool v. Chertoff</u>, 553 F. Supp. 2d 1131, 1147 (D. Ariz. 2008).

    38. Among the TRAC factors are considerations of the hardships imposed by the delayed agency action, including the guidance that delays are less tolerable "when human health and welfare are at stake" rather than just economic interest. *TRAC*. Additionally, the reasonableness of the delay must be judged in light of the government's justification for such delays. *Kashkool* (citing *Fraga v. Smith*, 607 F. Supp. 517, 522 (D.Or.1985)).

    39. In this case, more than just Plaintiff's economic interests are at stake. Plaintiff suffers from the uncertainty and instability that he has been plunged into for months now. As long as his application hangs in the balance, Plaintiff is effectively frozen in place, unable to make any decisions regarding his future and not knowing if he will be able to continue pursuing the career he desires in the United States.

    40. There are further human costs beyond Plaintiff as a result of the delay. As long as Plaintiff is unable to obtain his H-1B visa, the H-1B Petitioner Hallmark Global Technologies Inc. loses a highly trained, highly educated information technology expert and foregoes the contributions he would be able to continue making on its "Nimble Application Development" project. Plaintiff's employer, the H-1B Petitioner Hallmark Global Technologies Inc., is not only in fear of losing Plaintiff's services on this project, but also its various clients to whom the company petitioner plans to deliver its customized product on an ongoing basis. The H-1B Petitioner has an ongoing relationship with various clients which is extremely valuable to the company and because of these delays it is at risk of losing these clients. Losing these clients would cause a significant loss of revenue to it.

41. The implied government justification for this delay is that Plaintiff's application must undergo administrative processing due to security-related concerns that warrant further vetting. However, Plaintiff has been able to obtain a nonimmigrant visa in the past (F-1 student visa) and was admitted to the U.S. on December 27, 2014. That Plaintiff was admitted to the U.S. in F-1 student status is simply incongruous with the government's supposed need to engage in lengthy administrative processing to determine if he is a security threat.

42. Given Plaintiff's previous vetting and the implicit concession by the government upon his previous entry that his entry does not pose a threat to national security, it is entirely unclear what government objective is served by the extraordinary delay in adjudicating the visa application. Therefore, it is clear that the balance of the TRAC factors is heavily in Plaintiff's favor, as the ongoing delay in adjudication imposes numerous costs which are not clearly justified by any government objective.

Plaintiff Has Exhausted All Other Potential Remedies

43. Plaintiff has been left with no other recourse due to the intentional opaqueness of administrative processing. The U.S. Consulate has clearly expressed that it cannot provide a timeline for completion of processing and that the process cannot be expedited. The U.S. Consulate has not offered any alternative venues to register concerns. In fact, the latest email response from the U.S. Consulate on January 30, 2023 stated "The U.S. Consulate in Chennai is providing limited appointments for routine non-immigrant visa processing due to the COVID-19 pandemic. We will resume regular visa services as soon as possible, but are unable to provide a specific date at this time. **We kindly request that you do not send inquiries about the status of your case during this period**." (*Emphasis added.*)

44. The U.S. Department of State is similarly opaque, providing only limited information about the nature of administrative processing. The only indication of how an individual may follow up or inform the U.S. Department of State of urgent issues is a brief statement on a webpage for administrative processing that:

> Except in cases of emergency travel (i.e. serious illnesses, injuries, or deaths in your immediate family), before making inquiries about status of administrative processing, applicants should wait at least 180 days from the date of interview or submission of supplemental documents, whichever is later.[4]

There is no indication of where this inquiry should be lodged, leaving an applicant to assume that the proper recipient is the U.S. Embassy adjudicating the visa.

45. Plaintiff has repeatedly followed up with the U.S. Embassy, the only obvious (albeit unrecognized by the U.S. Department of State) avenue for administrative remedy. However, Plaintiff's visa application is still pending.

46. It is clear that Plaintiff has exhausted all possible options for administrative remedy. Plaintiff has contacted the only entity he knows is responsible for adjudicating the visa. The impenetrable information barriers surrounding "administrative processing" leaves Plaintiff with no other way to ensure his visa is adjudicated in a timely manner.

## CAUSES OF ACTION

**Count I: Request for Relief Under Mandamus Act**

47. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48. Mandamus is available to compel a federal official or agency to perform a duty if: (1) the plaintiff has a clear right to the relief requested; (2) defendant has a clear, non-discretionary

---

[4] https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html

duty to act; and (3) there is no other adequate remedy available. *See* 28 U.S.C. § 1361; *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002).

49. Plaintiff is eligible for and has fulfilled all requirements for the H-1B nonimmigrant visa. Plaintiff has submitted all necessary information and evidence supporting his application.

50. Defendant U.S. Department of State has a clear, ministerial, and nondiscretionary duty to adjudicate the visa application as it has been properly completed and executed. 8 U.S.C. 1153(e)(1), 1154; 22 C.F.R. 42.81(a). Consular officers at overseas posts are obligated by the agency's regulations to either issue or refuse visa applications by aliens seeking H-1B nonimmigrant visas once an application has been executed. 9 FAM 403.7-3. Plaintiff therefore has a clear and certain right to have his visa application adjudicated.

51. Plaintiff has exhausted all possible remedies, making the issuance of a writ of mandamus the only available recourse.

52. Plaintiff has a particularized and concrete injury because of the delay in his gainful employment and the continued uncertainty over his future.

**Count II: Request for Relief Under APA**

53. Section 706(1) of Title 5 provides that a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

54. "With due regard for the convenience and necessity of the parties or their representatives and within a *reasonable* time, each agency shall proceed to conclude a matter presented to it." *Emphasis added*. 5 U.S.C. § 555(b).

55. Defendant U.S. Department of State has promulgated regulations setting forth the process for adjudicating nonimmigrant visa applications for persons seeking to engage in specialty occupation work in the U.S.

56. Plaintiff has satisfied those regulations in applying for his H-1B visa.

57. The harm to Plaintiff cannot be terminated by Defendant's denying his visa to moot out this case, as it is endlessly repeatable. Plaintiff intends to continue reapplying for his visa until such time it is issued or an irrefutable basis of inadmissibility is provided.

58. The government has unlawfully withheld adjudication of Plaintiff's visa application despite accepting the application and the statutorily mandated fees, and without any good faith explanation for the extreme delay.

59. A reviewing court shall compel agency action that is unlawfully withheld or unreasonably delayed. 5 U.S.C. §§ 555(b), 706(1).

60. The government's failure to adjudicate Plaintiff's application constitutes final agency action reviewable by this Court under 5 U.S.C. § 704 because it is a "failure to act," 5 U.S.C. § 551(13). The current "Administrative Processing" under 221(g) is a sham refusal to satisfy statutory concerns.

61. A final action occurs when the "agency's decision-making process is at an end." *Fund for Animals v. Williams*, 391 F. Supp. 2d 132, 137 (D.D.C. 2005) (dicta). However, a mere indication that one decision-making process has concluded "does not constitute a final agency action" when there remain "subsequent discretionary actions requiring separate and independent decision-making that are divorced from the prior decision." *Id.*; *citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990) (quotations omitted); *see also Fund for Animals v. Bureau of Land Mgmt.*, 357 F.Supp. 2d 225, 229 (D.D.C. 2004) (holding that when implementation of an action requires further agency decision making, the announcement of a decision is not a final action). Thus, a visa decision that requires additional processing and review is not a final decision and does not make the case moot under consular non-reviewability.

62. Defendants' inaction has caused particularized and concrete injury to Plaintiff with further impending injury if inaction continues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Issue a writ of mandamus ordering Defendants to adjudicate Plaintiff's nonimmigrant visa application within 30 days;

(2) Declare that Defendants' delay in adjudicating Plaintiff's visa application is unreasonable and violates the APA, and that Plaintiff is entitled to prompt adjudication of his visa application within 30 days;

(3) Award reasonable attorney's fees and costs as provided under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(4) Grant Plaintiffs such further relief as the Court deems just and proper.

DATED this 16th day of February 2023:

        /s/ Mika B. Kozar, Esq.
Mika B. Kozar, Esq. (Bar ID: NJ028)
Law Office of Thomas V. Allen, PLLC
P.O. Box 517
Monmouth Junction, NJ 08852
Tel: (732) 832-7978
Fax: (609) 288-7733
mika@tvalawyers.com
Counsel for Plaintiff

Index of Exhibits

**EXHIBIT A**   First I-129, H-1B Approval Notice for Plaintiff, dated May 06, 2020

**EXHIBIT B**   Second, I-129, H-1B Approval Notice for Plaintiff, dated December 6, 2021

**EXHIBIT C**   Email correspondence between Plaintiff and the U.S. Consulate in Chennai, India between October 18, 2022 and January 30, 2023

**EXHIBIT D**   Case status update from the U.S. Department of State on September 06, 2022, stating that Plaintiff's visa application was refused

**EXHIBIT E**   Email from US Consulate in Chennai, India to Plaintiff on September 07, 2022, requesting him to submit additional documents in order to continue processing of his visa application

**EXHIBIT F**   Email sent to US Consulate in Chennai, India on September 27, 2022 by Plaintiff along with the documents requested by the US Consulate in order to continue processing of his visa application.

**EXHIBIT G**   Copy of Plaintiff's current and previous passport biographic pages, F-1 visa stamp, Form I-94 and Form I-94 Travel History